IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JERMAINE BOLDEN                          :

   v.                                    :   Civil Action No. DKC 13-1265

MCCABE, WEISBERG & CONWAY, LLC           :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law, § 14-201 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.*, is a motion to dismiss filed by Defendant McCabe, Weisberg & Conway LLC ("Defendant") (ECF No. 12) and a motion for summary judgment filed by *pro se* Plaintiff Jermaine Bolden ("Plaintiff") (ECF No. 16). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss will be granted and Plaintiff's motion for summary judgment will be denied as moot.

**I. Background**

   **A. Factual Background**

Plaintiff, proceeding *pro se*, commenced this action on April 29, 2013, alleging violations of federal and state consumer laws. Plaintiff's only factual allegations in support of his consumer law claims are that "[o]n February 9, 2013 and March 7, 2013, Defendant initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose, thereby reducing Plaintiff's credit score." (ECF No. 1 ¶ 7).[1] Plaintiff asserts that Defendant's actions have harmed him, "resulting in credit denials, credit delays, inability to apply for credit, loss of use of funds, mental anguish, emotional distress, humiliation, a loss of reputation, and expenditures for fees and costs." (*Id.* ¶ 8).

Although the complaint itself does not identify the relationship between the parties, documentation attached thereto sheds some light on the gravamen of Plaintiff's complaint. It appears that Plaintiff executed a Note on December 23, 2010 with

---

[1] A "hard pull" is a full credit inquiry conducted when someone applies for a loan or line of credit. *See Harkins, Jr. v. Diversified Collection Servs., Inc.*, No. PJM 12-1229, 2012 WL 5928997, at *1 n.1 (D.Md. Nov. 26, 2012). It has been said that each hard pull can result in the reduction of a credit score by up to five points. *Id.* Plaintiff includes as an exhibit several "alerts" showing that M&T Bank Mortgage, rather than Defendant, flagged his account on February 9 and March 7, 2013 as "Bank Adjustment/Deed in Lieu/Bank Liquidation." (ECF No. 1-10, at 2-3).

First Home Mortgage Corporation, in the amount of $136,905.00. (ECF No. 1-6).[2] First Home Mortgage Corporation endorsed the Note to Maryland Community Development Administration, making it the holder of the Note. (ECF No. 1-9, at 11). On the same date, Plaintiff executed a Deed of Trust securing to the lender, First Home Mortgage Corporation, the real property located at 3603 Fernandes Drive, Temple Hills, Maryland, for the payment of the Note. (ECF No. 1-7). The Deed of Trust identifies the beneficiary as "Mortgage Electronic Registration Systems, Inc. ('MERS') (solely as nominee for lender [First Home Mortgage Corporation] . . . and Lender's successors and assigns)." (*Id.* at 2). David E. Waters and Anthony B. Olmert Sr. are identified as the Trustees in the Deed of Trust. (*Id.*). Paragraph 20 of the Deed of Trust provides that:

> Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

(ECF No. 1-7, at 8). On December 4, 2012, MERS, as nominee for First Home Mortgage Corporation, assigned the Deed of Trust to

---

[2] The Note identifies First Home Mortgage Corporation as the lender. (ECF No. 1-6, at 2).

M&T Bank, which now services Plaintiff's loan. (ECF Nos. 1-8 & 1-9). This assignment was recorded in the land records in Prince George's County on February 6, 2013. On January 17, 2013, the Community Development Administration of the Maryland Department of Housing and Community Development executed a Deed of Appointment of Substitute Trustees, appointing the following substitute trustees under the Deed of Trust: Laura H.G. O'Sullivan; Erin M. Brady; Diana C. Theologou; Laura L. Latta; Jonathan Elefant; Laura T. Curry; and Chasity Brown. (ECF No. 1-9, at 13-14).[3]

The record further reflects that Plaintiff defaulted on the loan on July 2, 2012 in the amount of $4,370.32, and M&T Bank filed a Notice of Intent to Foreclose. (ECF No. 1-9, at 2). A review of publicly available records shows that the substitute trustees subsequently commenced a foreclosure action on January 31, 2013 in the Circuit Court for Prince George's County, Maryland, and Plaintiff was served on or about February 27, 2013. Plaintiff includes as an exhibit a letter from the law offices of McCabe, Weisberg & Conway, LLC, dated April 26, 2013,

---

[3] It appears that at least some of these individuals are associated with the firm McCabe, Weisberg & Conway, LLP. *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F'Appx. 223, 227 (4th Cir. 2013) ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" (*quoting* Fed.R.Evid. 201(b))).

4

providing Plaintiff with "notice of impending foreclosure sale." (ECF No. 1-10, at 4). The notice from Defendant informed Plaintiff of the date (May 14, 2013) and time of the foreclosure sale and also regarding possible rights renters have to continue renting the property until the end of the lease term.

Plaintiff also submits with the complaint a "Qualified Written Request" and "Milestones Request" concerning his mortgage on the property. (ECF Nos. 1-2 & 1-3). In these documents, Plaintiff asserts that "McCabe, Weisberg & Conway LLC sends [him] letters threatening foreclosure action. Without proof that McCabe, Weisberg & Conway has any authority to enforce the Mortgage, collect payments, or even mail anything to [Plaintiff]." (ECF No. 1-2, at 2). Plaintiff further contends that he needs "validation that the contractual obligations were met by both sides." (*Id.*). In the "Milestones Request" document, Plaintiff seeks clarification on whether his mortgage loan with First Home Mortgage Corporation was assigned to M&T Bank. (*See* ECF No. 1-3). Plaintiff alleges that "the Note and Deed of trust has been bifurcated thus the defendant does not have standing. For relief [Plaintiff is] seeking damages under any fair debt collections practices act, fair credit reporting act, consumer protection act, monetary violations, original closing cost, court cost and A Quiet Title." (ECF No. 1-1).

5

On May 13, 2013, Plaintiff hand-delivered to the clerk's office a document entitled "Plaintiff Jermaine Bolden['s] Request to Stop the Sale," asking the court to enjoin a foreclosure sale scheduled for the following day, May 14, 2013. (ECF No. 4). Construing this document as a motion for a temporary restraining order, the motion was denied because the issues raised by Plaintiff bore no apparent relationship to any relief sought in the complaint and federal courts generally do not interfere in state court foreclosure proceedings. (ECF No. 6).

Defendant then moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on July 5, 2013 (ECF No. 12). Plaintiff opposed the motion on July 17, 2013 (ECF No. 15), and subsequently moved for summary judgment on August 7, 2013 (ECF No. 16). Defendant opposed the motion on August 26, 2013 (ECF No. 19), and Plaintiff replied on September 16, 2013 (ECF No. 23).

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than

6

a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles County Commis*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (*quoting* Fed.R.Civ.P.

7

8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

**A. FCRA (Counts I & II)**

The sparse factual allegations in the complaint and the attached documentation do not support an FCRA claim. Plaintiff merely asserts that Defendant willfully and negligently obtained his consumer report under false pretenses without a permissible purpose in violation of Sections 1681b and 1681q. (ECF No. 1, at 2).

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 52 (2007). The FCRA imposes civil liability on any person – defined to include any corporation or other entity, *see* 15 U.S.C. § 1681a(b) – who willfully or negligently fails to comply with its requirements. *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899-900 (4th Cir. 2003); *see also* 15 U.S.C. §§ 1681n, 1681o. Section 1681b(f) prohibits persons from "us[ing] or obtain[ing] a consumer report for any purpose" unless that

purpose is expressly authorized by the FCRA.[4] To state a claim for an improper use or acquisition of a consumer report, Plaintiff must plead the following elements: (1) that there was a consumer report; (2) that Defendant used or obtained it; (3) that Defendant did so without a permissible statutory purpose; and (4) that Defendant acted with the specified culpable mental state. *Suit v. Direct TV, LLC*, No. 12-cv-1784-JKB, 2012 WL 5880280, at *1 (D.Md. Nov. 20, 2012); *Shepherd Salgado v. Tyndall Fed. Credit Union*, No. 11 Civ. 0427 (WS-B), 2011 WL 5401993, at *3 (S.D.Ala. Nov. 7, 2011); *McFarland v. Bob Saks Toyota, Inc.*, 466 F.Supp.2d 855, 867 (E.D.Mich. 2006).[5] Plaintiff must plead facts to support each element of his claim in order to survive a motion to dismiss.

The allegations contained in Plaintiff's complaint do not provide sufficient notice to Defendant as required by Rule

---

[4] Section 1681q provides for damages when "any person knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q. "The standard for determining when a consumer report has been obtained under false pretenses will usually be defined in relation to the permissible purposes of consumer reports which are enumerated in 15 U.S.C. § 1681b." *Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir. 1978).

[5] To prevail on the theory of willful violation of the FCRA, the plaintiff must "show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." *Ausherman*, 352 F.3d at 900 (internal citations omitted). Plaintiff's allegations fail to make this showing.

8(a)(2) and as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Instead, Plaintiff simply recites elements of potential causes of action under the FCRA, but the factual and contextual information Plaintiff includes do not show how Defendant violated the FCRA. As an initial matter, although Plaintiff provides alerts showing that M&T Bank pulled his credit report on February 9 and March 7, 2013, he includes no factual support for the allegation that McCabe, Weisberg & Conway, LLP used or obtained his credit report, much less for an impermissible purpose. Plaintiff argues in the opposition that McCabe, Weisberg & Conway LLP is foreclosing on his property and that "[t]he defendant has injured the plaintiff by proceeding in foreclosure actions without standing." (ECF No. 15, at 2). He further asserts that "Plaintiff's credit was not affected by M&T Bank until after the defendant has become the substitute trustee and filed for foreclosure . . . the defendant has tried to collect on an unproven debt through the deed of trust." (*Id.*). Plaintiff fails to explain how Defendant's actions in connection with the foreclosure proceeding amount to FCRA violations. Because Plaintiff has failed to provide any facts giving rise to a plausible claim that Defendant violated the FCRA negligently, much less willfully, Plaintiff has not met his pleading burden. Accordingly, Counts I and II will be dismissed.

B. **FDCPA (Count III)**

Plaintiff also alleges that Defendant violated various provisions of the FDCPA, which protects consumers from "abusive and deceptive debt collection practices by debt collectors." *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F.Supp.2d 492, 500 (D.Md. 2004). The FDCPA "forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). In order to prevail on a FDCPA claim, a Plaintiff must show that:

> (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debtor collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.

*Dikun v. Streich*, 369 F.Supp.2d 781, 784 (E.D.Va. 2005) (*citing Fuller v. Becker & Poliakoff*, 192 F.Supp.2d 1361 (M.D.Fla. 2002) (citations omitted)).[6] Plaintiff alleges violations of 15 U.S.C. §§ 1692e(2), 1692e(5), 1692e(10), and 1692f(1). The relevant portions of Section 1692e provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of

---

[6] The Fourth Circuit has held that an attorney foreclosing on a property pursuant to a deed of trust can be a debt collector under the FDCPA. *Wilson v. Draper & Goldberg*, 443 F.3d 373, 378-79 (4th Cir. 2006).

> any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . .
>
> (2) The false representation of –
>
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. Plaintiff also alleges that Defendant violated Section 1692f(1), which is the "unfair practices" section of the FDCPA and prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Beyond reciting the relevant statutory provisions, the complaint and incorporated exhibits are wholly devoid of any allegations concerning how Defendant made any false, deceptive, or misleading representations. *See, e.g., Jones v. Fisher Law Group, PLLC*, 334 F.Supp.2d 847, 851 (D.Md. 2004) (dismissing FDCPA claim where the complaint lacked any specific allegations

of deception or wrongdoing by the law firm that would properly allege a violation of the FDCPA). The opposition does not provide further clarity regarding any alleged FDCPA violations, but suggests that Plaintiff challenges Defendant's authority to proceed with foreclosure on the property. (*See* ECF No. 15, at 1 ("Is the defendant the Substitute trustees of the Deed of trust or the Promissory note? Because the Note and Deed of trust has been bifurcated, the situation is very confusing and the defendant has yet to explain their foreclosure actions clearly.")) Plaintiff further asserts that "[a]s a consumer Plaintiff has a right to know who owns the plaintiff's note and the transaction that took place to execute any sale of it. So many [q]uestions unanswered from the debt collector/substitute trustee McCabe Weisberg & Conway." (ECF No. 15, at 2). The plaintiff in *Hill v. Wilmington Finance, Inc.*, No. 13-cv-524-RWT, 2013 WL 4659704, at *5 (D.Md. Aug. 29, 2013), premised his FDCPA claim and request to quiet title on similar allegations, disputing "the title and ownership of the real property in question," and claiming that "the originating mortgage lender, and others alleged to have ownership, have unlawfully sold, assigned, and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust related" to the property. The court held that plaintiff's allegations failed to state a claim for which relief can be granted under federal and

state law. Plaintiff's FDCPA claim here suffers from the same infirmity. Indeed, Plaintiff's confusion regarding Defendant's authority to foreclose does not give rise to an FDCPA claim. *See, e.g., id.* at *4 (dismissing FDCPA claim where plaintiff alleged that the defendant failed to provide him with proof of ownership of the debt and the complaint lacked specific allegations concerning the time, dates, conduct, or actors in violation of the FDCPA); *Montalbano v. National Arbitration Forum, LLC*, No. RWT 10cv2237, 2012 WL 3233595, at *5 (D.Md. Aug. 3, 2012) (dismissing complaint where a plaintiff's FDCPA allegations were "devoid of factual details" and made "in conclusory terms."). Accordingly, this claim will be dismissed.

**C.    MCDCA (Count IV)**

The MCDCA "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts." *Shah v. Collecto, Inc.*, DKC-04-4059, 2005 WL 2216242, at *10 (D.Md. Sept. 12, 2005) (quotation omitted). Plaintiff alleges that "Defendant violated § 14-202(5) by, [c]laiming, attempting or threatening to enforce a right with knowledge that the right does not exist." (ECF No. 1 ¶ 21). Plaintiff's MCDCA claim fails because it merely recites the statutory language. In order to succeed on a MCDCA claim, the express language of the MCDCA requires that Plaintiff allege that Defendant acted with *knowledge* as to the invalidity

of the debt. *Akalwadi*, 336 F.Supp.2d at 511 (noting that knowledge can either mean actual knowledge or that the defendant acted with reckless disregard.). Plaintiff's complaint and the documents attached thereto do not make this requisite showing. Because Plaintiff fails to allege facts sufficient to state a claim for relief that is plausible on its face, the MCDCA claim will also be dismissed.

### D. MCPA (Count V)

Finally, Plaintiff asserts that Defendant violated multiple MCPA sections. As an initial matter, Section 13-104 exempts various professional services from the MCPA, including lawyers. *See* Md. Code Ann., Com.Law § 13-104(1); *Robinson v. Foundtainhead Title Grp. Corp.*, 447 F.Supp.2d 478, 490 (D.Md. 2006). Plaintiff acknowledges that McCabe, Weisberg & Conway, LLC is a law firm. Even assuming McCabe, Weisberg & Conway, LLC was "not acting within the scope of [their] license as attorneys" but as substitute trustees (or representatives of the substitute trustees), as alleged by Plaintiff in the opposition, courts in this district have applied the exemption to dismiss MCPA claims against the enumerated professionals even when plaintiffs have alleged that they were acting in some way other than their professional capacity. *See Robinson*, 447 F.Supp.2d at 490; *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D.Md. 2012) (dismissing MCPA claim against defendant lawyers under

15

professional services exemption where lawyers acted as trustees in foreclosure proceedings during events at issue in complaint); *Butler v. Wells Fargo Bank, N.A.*, Civil Action No. MJG-12-2705, 2013 WL 145886, at *3 (D.Md. Jan. 11, 2013) (same). Accordingly, this claim will be dismissed.

IV. **Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendant will be granted.  Plaintiff's motion will be denied. A separate order will follow.

 

 

DEBORAH K. CHASANOW
United States District Judge